# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **DARREN L. CHISLEY, et al.** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **Civil Action No.: 06-1910 (HHK)** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT'S MOTION TO DISMISS THE COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION

Defendant, the United States of America, moves to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(1) because this Court lacks subject matter jurisdiction over Plaintiffs' claims. Plaintiffs have brought this tort case pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671-80 ("FTCA"), alleging negligence by the Department of State in driving a shuttle bus. This case should be dismissed because, at the relevant time, the shuttle bus operations were being run by a private contractor, not the Department of State, and the shuttle bus was being driven by an independent contractor, not a federal employee. Therefore, the FTCA does not provide a jurisdictional basis for Plaintiffs' claims against the United States.

Attached to this motion are a memorandum of law in support of Defendant's motion, supporting materials, and a proposed order.

Respectfully submitted,

   /s/ Jeffrey A. Taylor
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


   /s/ Rudolph Contreras
RUDOLPH CONTRERAS, D.C. BAR #  434122
Assistant United States Attorney


   /s/ Michelle N. Johnson
 MICHELLE N. JOHNSON, D.C. BAR # 491910
Assistant United States Attorney
United States Attorney's Office
Civil Division
555 4th Street, N.W. – Room E4212
Washington, D.C. 20530
(202) 514-7139

COUNSEL FOR DEFENDANT



Of Counsel:

Lisa Grosh
Office of the Legal Adviser
International Claims & Investment Disputes
2430 E Street, NW
South Building, Suite 203
Washington, DC 20037-2800

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **DARREN L. CHISLEY, et al.** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **Civil Action No.: 06-1910 (HHK)** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| Defendant. | ) | |
|  | ) | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO
DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

Defendant, the United States of America, respectfully submits this memorandum of law

in support of its motion to dismiss the complaint in this matter.  As will be set forth more fully

below, Plaintiffs' complaint must be dismissed because the alleged tortfeasor was not an

employee of the United States.  Accordingly, the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b)

and 2671-80 ("FTCA"), does not provide an avenue by which Plaintiffs can hold the United

States liable.

**I.    FACTUAL BACKGROUND**

Plaintiffs, Darren L. Chisley and Katrina B. Thornton, allege in their complaint that on

March 1, 2005, as Ms. Thorton was driving a vehicle in which Mr. Chisely was a passenger, they

were involved in an accident with a United States Department of State ("DOS") vehicle.

(Compl. ¶¶ 7, 11).  Specifically, Plaintiffs contend that as they were driving eastbound on I (Eye)

Street, S.W., the car in which they rode was hit by a DOS shuttle bus that was being driven by

Mr. Theodore Allen, Jr.  (Id. ¶ 11; see also Exhibit ("Ex.") 1, Traffic Accident Report).

1

According to Plaintiffs, as both vehicles were entering the intersection of I (Eye) Street, S.W., and Half Street, S.W., Mr. Allen attempted to make an improper right-hand turn onto Half Street, S.W., resulting in a collision with their vehicle and thereby "causing property damage to [their] vehicle as well as personal injuries to Mr. Chisley and Ms. Thorton." (Id. ¶ 11). Plaintiffs each seek damages in the amount of two-hundred fifty thousand dollars ($250,000.00). (Id. ¶¶ 12-13). Plaintiffs filed their administrative claims on August 30, 2005. (Ex. 2, Administrative Claims filed by Plaintiffs). They filed their action in this Court on November 6, 2006.

A shuttle bus is operated for DOS employees and official visitors. It interconnects DOS's headquarters building located at 23rd and D Streets, N.W., with various DOS annex facilities. (Ex. 3, Declaration of Vince J. Chaverini ("Chaverini Decl.") ¶ 3; see also Chaverini Decl., Attachment 1 (Excerpts of Contract between DOS and Skyhawk Logistics, Inc.), at 8, § C.2). The driver services for that shuttle bus are performed by a contractor, Skyhawk Logistics, Inc. ("Skyhawk"). (Ex. 3, Chaverini Decl. ¶ 3; id. Attachment 1). At all relevant times, Theodore Allen, Jr., the driver alleged to have been driving the DOS shuttle bus on March 1, 2005, was an employee of Skyhawk Logistics, Inc. (Ex. 4, Letter to Aileen Robinson from Kevin G. Madden, Sr.).

The contract does not give DOS the power to supervise Skyhawk's employees, nor has DOS personnel ever supervised Skyhawk's employees in their performance of the contract at issue. (Chaverini Decl. ¶ 5). Rather, Skyhawk retains full responsibility for the provision of "all personnel, supervision, and any other items or services necessary to perform all services . . ." under the contract. (Chaverini Decl., Attachment 1, at 8, § C.3; see also id. at 11, § C.4). The contract sets forth certain standards by which Skyhawk is expected to operate DOS shuttle buses,

such as requiring that contract drivers "operate the shuttle vehicle at all times in a responsible and competent fashion." (Chaverini Decl., Attachment 1, at 13, § C.2). Thus, while the quality of Skyhawk's operations are subject to DOS's review, and Skyhawk must ensure its drivers meet certain standards, the contract explicitly provides that Skyhawk is responsible for the day-to-day supervision of its employees. (Chaverini Decl., Attachment 1, at 8, § C.3; see also id. at 11, § C.4). In addition, pursuant to the contract, Skyhawk undertook the obligation to maintain vehicle and liability insurance. (Id. at 26, § H.6(b)). Skyhawk bears full responsibility for any and all traffic violations. (Id. at 16, § C.7).

## II.    STANDARD OF REVIEW

In reviewing a motion to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the court must accept the complaint's well-pled factual allegations as true and draw all reasonable inferences in the plaintiff's favor." Thompson v. Capitol Police Board, 120 F. Supp. 2d 78, 81 (D.D.C. 2000) (citations omitted). "The court is not required, however, to accept inferences unsupported by the facts alleged or legal conclusions that are cast as factual allegations." Rann v. Chao, Dep't of Labor, 154 F. Supp. 2d 61, 64 (D.D.C. 2001) (citing Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990)). In addition, when determining whether jurisdiction is proper, the Court is at liberty to look beyond the pleadings without converting the motion into one for summary judgment. See Haase v. Sessions, 835 F.2d 902, 905 (D.C. Cir. 1987) ("It seems clear . . . that the plain language of Rule 12(b) permits only a 12(b)(6) motion to be converted into a motion for summary judgment").

Moreover, it is clear that courts routinely decide the applicability of the FTCA's independent contractor exclusion at the motion to dismiss stage. See, e.g., Macharia v. United

3

States, 334 F.3d 61, 63 (D.C. Cir. 2003) (affirming district court's dismissal following limited

jurisdictional discovery); Cannon v. United States, 645 F.2d 1128, 1130 (D.C. Cir. 1981)

(reversing district court's denial of government's pre-discovery motion to dismiss); Phillips v.

Federal Bur. of Prisons, 271 F. Supp. 2d 97 (D.D.C. 2003) (granting government's motion to

dismiss where government attached copy of contract to its reply brief); Banuwal v. United

States, No. CIV.A. 91-1455, 1992 WL 29968 (D.D.C. Jan. 30, 1992) (granting government's

motion to dismiss); Hockman v. United States, 741 F. Supp. 5 (D.D.C. 1990) (same); Jennings v.

United States, 530 F. Supp. 40 (D.D.C. 1981) (same).

## III.    ARGUMENT

### A.    THE FTCA DOES NOT WAIVE THE UNITED STATES' IMMUNITY FOR THE TORTIOUS ACTIONS OF AN INDEPENDENT CONTRACTOR.

When it enacted the FTCA's narrow waiver of sovereign immunity, Congress limited the

government's liability to torts committed by "employee(s) of the Government" acting within the

scope of their employment.  28 U.S.C. § 1346(b)(1); see Sheridan v. United States, 487 U.S. 392,

400 (1988); United States v. Orleans, 425 U.S. 807, 813 (1976).  The term "employee of the

government" includes "persons acting on behalf of a federal agency in an official capacity,

temporarily or permanently in the service of the United States, whether with or without

compensation . . . ."  28 U.S.C. § 2671.  In turn, the term "Federal agency' . . . does not include

any contractor with the United States."  Id.  Therefore, the government may not be sued for the

actions of contractors under the FTCA.

The Supreme Court analyzed the criteria for determining whether an individual is an

"employee of the Government" in the leading cases of United States v. Orleans, 425 U.S. 807

4

(1976), and Logue v. United States, 412 U.S. 521 (1973). The Court explained that guidance from the government, or requirements that a contractor comply with government regulations, do not establish the type of control necessary to form an employee–employer relationship under the FTCA. Orleans, 425 U.S. at 815-18; Logue, 412 U.S. at 529-30. Rather, the issue turns on "whether the [contractor's] day-to-day operations are supervised by the Federal Government," Orleans, 425 U.S. at 815, and on the right of the United States "to control the detailed physical performance of the contractor . . . ." Logue, 412 U.S. at 528.

Of course, supervision of a contract is not the same thing as supervision of the contractor's employees' actions. See Orleans, 425 U.S. at 818. Contractual provisions reserving the right to inspect a contractor for compliance with contract terms do not constitute sufficient control over the contractor so as to vitiate the contractor exclusion to FTCA liability. See, e.g., Murdock v. United States, 951 F.2d 907, 912 (8th Cir. 1991), cert. denied, 505 U.S. 1206 (1992) ("That the government had the right to inspect [the contractor's] work and to order that work be stopped does not translate into a finding that the Bureau retained sufficient control over [the contractor's] work.") (citations omitted). Allegations that a contractor was required to comply with detailed regulations, specifications or standards in performing its work do not establish that the United States supervised the contractor's day-to-day operations or controlled the detailed physical performance of the contractor's work, and do not, standing alone, vitiate the contractor exclusion. Logue, 412 U.S. at 529-30; Orleans, 425 U.S. at 817-18; Macharia, 334 F.3d at 61. See also Cooper v. United States, 225 F. Supp.2d 1, 4 (D.D.C. 2002) ("[C]ourts have allowed the government extensive flexibility in the amount of supervision it exerts over a contractor before it will deem that contractor an agent and its acts the acts of the United States.") Absent a showing

of day-to-day supervision or a right of control by the United States, the United States is not

liable for the torts committed by the contractor or its employees.

The lower courts in the D.C. Circuit and District Courts consistently apply this standard

from Logue and Orleans.  See, e.g. Macharia v. United States, 334 F.3d 61 (D.C. Cir. 2003);

Cannon, 645 F.2d at 1128; Phillips, 271 F. Supp. 2d at 97; Cooper v. United States, 225 F. Supp.

2d 1 (D.D.C. 2002); Hockman v. United States, 741 F. Supp. 5 (D.D.C. 1990); Jennings v.

United States, 530 F. Supp. 40 (D.D.C. 1981).

> **B.    THE ACCIDENT AT ISSUE WAS CAUSED BY THE ALLEGED
> NEGLIGENCE OF AN INDEPENDENT CONTRACTOR AND
> THUS THE FTCA DOES NOT PROVIDE A PROPER
> JURISDICTIONAL BASIS FOR PLAINTIFFS' COMPLAINT.**

Subject matter jurisdiction has not been established against the United States because it

cannot be sued for the tortious acts of its contractors.  See Banuwal, 1992 WL 29968, at *1

(holding that the court lacked a "proper jurisdictional basis" to hold the United States liable for

the actions of an independent contractor).  The United States, as sovereign, is immune from suit

except as it consents to be sued.  FDIC v. Meyer, 510 U.S. 471, 474 (1994); United States v.

Sherwood, 312 U.S. 584 (1971).  In enacting the FTCA, Congress granted a limited surrender of

the sovereign immunity of the United States.  Orleans, 425 U.S. at 813.  However, by its own

terms, the FTCA waives the sovereign immunity of the United States only for claims resulting

from the negligent or wrongful omissions of federal agencies or "employees of the government."

28 U.S.C. §§  1346(b) and 2671.  See id. at 814-15.  As previously noted, the FTCA, in fact,

defines the terms "federal agency" and "employee" to exclude "any contractor with the United

States."  28 U.S.C. § 2671.

Plaintiffs cannot hold the United States liable for the alleged actions of Theodore Allen,

6

Jr., because he was a contractor, not an employee of the United States, at the time of the alleged incident.  (Ex. 4).  Furthermore, the conduct of the United States, and its contract with Skyhawk, does not meet the threshold criteria under <u>Logue</u> and <u>Orleans</u> for establishing FTCA liability for the acts or omissions of a government contractor.  See <u>Logue</u>, 412 U.S. at 528; <u>Orleans</u>, 425 U.S. at 815; <u>Phillips</u>, 271 F. Supp. at 101.  The United States did not provide detailed supervision of the performance of the independent contractor.  (Ex. 3, Chaverini Decl., ¶ 5).  Rather, the contract at issue clearly provides that the independent contractor was responsible for supervising its own personnel in their operation of the shuttle bus.  (<u>Id.</u>, Attachment 1, at 8, § C.3; <u>see also</u> <u>id.</u> at 11, § C.4).  Because the federal government did not supervise "the contractor's day-to-day operations . . ." and did not have the power "to control the detailed physical performance of the contractor[,]" the United States cannot be liable for the tortious conduct, if any, of Skyhawk's employee.  <u>Macharia</u>, 334 F.3d at 68 (internal quotation marks and citations omitted).  <u>See also</u> <u>Orleans</u>, 425 U.S. at 815-16 (1976); <u>Logue</u>, 412 U.S. at 529-30 (1973); <u>Cannon v. United States</u>, 645 F.2d 1128, 1139-40 (D.C. Cir. 1981).

For these reasons, the limited waiver of the Government's immunity under the FTCA does not encompass Plaintiffs' claims against the United States.  The United States has no liability under the doctrine of <u>respondeat</u> <u>superior</u> where, as here, the alleged tortfeasor is not an employee of the Government, but rather a contractor, and the United States did not control the contractor's day-to-day operations.  Therefore, dismissal for lack of subject-matter jurisdiction is warranted.  <u>Macharia</u>, 334 F.3d at 64 (affirming district court's dismissal of complaint alleging claims under the FTCA pursuant to Rule 12(b)(1) where claims were, in part, barred by the independent contractor exemption); <u>Banuwal</u>, 1992 WL 29968, at 1 (dismissing suit "against the

United States charging liability for an independent contractor's actions" because the allegations

did "not provide a proper jurisdictional basis under the FTCA . . . .").

## <u>CONCLUSION</u>

For the foregoing reasons, the complaint in this matter should be dismissed.

Respectfully submitted,

   /s/ Jeffrey A. Taylor
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


   /s/ Rudolph Contreras

RUDOLPH CONTRERAS, D.C. BAR #  434122
Assistant United States Attorney


   /s/ Michelle N. Johnson
 MICHELLE N. JOHNSON, D.C. BAR # 491910
Assistant United States Attorney
United States Attorney's Office
Civil Division
555 4th Street, N.W. – Room E4212
Washington, D.C. 20530
(202) 514-7139

COUNSEL FOR DEFENDANT


Of Counsel:

Lisa Grosh
Office of the Legal Adviser
International Claims & Investment Disputes
2430 E Street, NW
South Building, Suite 203
Washington, DC 20037-2800

# EXHIBIT 1

3

LAG #1547



TRAFFIC ACCIDENT REPORT

025-960



025-960

Received Fax :    Mar 02 2005 12:13PM    Fax Station :  MATGNEY B MOHSEN    P. 1

Complaint No. 025-760

| No. 1 | 991538214 | Colliding |
| No. | | |

**NARRATIVE:**

on the scene investigation revealed D-1 + D-2 traveling Eastbound on I ST. SW.
when D-2 tried to make a right turn onto half ST. SW. from the left side of
D-2 who was next to the curb also going straight on I ST. SW.
D-1 issued a NOI for Colliding, no damage to v-1, but D-2 damages listed.

| Lawrence E Campbell | 5774 | 1D | St. Del Gallo | 5314 | 1D | |

**CONTINUATION SHEET** (List item number of section overleaf with required information.)

Contract No.

# EXHIBIT 2

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse for additional instructions | FORM APPROVED OMB No. 1105-0008 Expires 5-31-05 |
|---|---|---|

| 1. Submit To Appropriate Federal Agency | 2. Name, Address of claimant and claimant's personal representative, if any. (See instructions on reverse.) (Number, street, city, State, and Zip Code) |
|---|---|
| Office of the Legal Adviser Suite 203, South Building 2430 E Street, N.W. Washington, DC 20037-2800 | KATRINA B. THORNTON 6406 Wilcox Court Alexandria, VA 22310 Attorney and Personal Representative: Arya Mohsen, Esq., Maloney & Mohsen PLLC, 4201 Connecticut Avenue, NW, Suite 500, Washington, DC 20008-1163 (202) 237-6800 Ext. 203 |

| 3. TYPE OF EMPLOYMENT Military__ Civilian ☑ | 4. DATE OF BIRTH 10/2/1979 | 5. MARITAL STATUS Unmarried | 6. DATE AND DAY OF ACCIDENT Tuesday, March 1, 2005 | 7. TIME (A.M. OR P.M.) 10:00 a.m. |
|---|---|---|---|---|

**8. BASIS OF CLAIM** (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof.) (Use additional pages if necessary.)

As is indicated by the attached Metropolitan Police of the District of Columbia *Traffic Accident Report*, at approximately 10:00 a.m., on March 1, 2005, the Claimant Katrina B. Thornton was driving her vehicle in an eastbound direction along I (Eye) Street, S.W., in Washington, D.C. In the traffic lane immediately to Ms. Thornton's left was a United States Department of State shuttle bus which was also being driven in an eastbound direction along I (Eye) Street, S.W., by Theodore Allen, Jr.

As both vehicles were entering the intersection of I (Eye) Street, S.W., and Half Street, S.W., Mr. Allen – without first changing to the right-hand lane – attempted to make a right-hand turn on to Half Street, S.W. As a consequence of this improper attempt to make a right-hand turn, Mr. Allen's shuttle bus collided with Ms. Thornton's vehicle. Mr. Allen was subsequently issued a traffic ticket by an officer of the Metropolitan Police whose name appears to be L.E. Armistead (Badge No. 3374).

**PROPERTY DAMAGE**

**9. NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT** (Number, street, city, State, and Zip Code)
The damaged vehicle is owned by the Claimant Katrina B. Thornton.

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE, AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. (See instructions on reverse side.)
The Claimant Katrina B. Thornton's vehicle suffered massive damage to its left side which has not been repaired to her satisfaction. It is located at her home at 6406 Wilcox Court, Alexandria, VA 22310.

**PERSONAL INJURY/WRONGFUL DEATH**

**10. STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT. STATE NAME OF INJURED PERSON OR DECEDENT.**
As is set forth with greater specificity in the attached medical records, as a result of the force of the collision, the Claimant Katrina B. Thornton suffered cervical sprain/strain, thoracic sprain/strain, lumbosacral sprain/strain, ligament laxity, and paraspinal myofascitis with the back and chest pain and difficulty in movement typically attending those injuries.

**WITNESSES**

| 11. NAME | ADDRESS (Number, street, city, State, and Zip Code) |
|---|---|
| Katrina B. Thornton | 6406 Wilcox Court, Alexandria, VA 22310 |
| Darren L. Chisley | 6406 Wilcox Court, Alexandria, VA 22310 |
| Officer L.E. Armistead (Badge No. 3374) | D.C. Metropolitan Police, 415 Fourth Street, S.W., Washington, DC 20024 |

**12.** (See instructions on reverse.) **AMOUNT OF CLAIM** (in dollars)

| 12a. PROPERTY DAMAGE $13,000.00 | 12b. PERSONAL INJURY $250,000.00 | 12c. WRONGFUL DEATH Not applicable | 12d. TOTAL (Failure to specify may cause forfeiture of your rights.) $263,000.00 |
|---|---|---|---|

I CERTIFY THAT THE AMOUNT OF CLAIM COVER SONLY DAMAGES AND INJURIES CAUSED BY THE ACCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM

| 13a. SIGNATURE OF CLAIMANT. (See instructions on reverse side.) | 13b. Phone number of signatory (703) 317-0503 | 14. DATE OF CLAIM May 19, 2005 |
|---|---|---|

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM The claimant shall forfeit and pay to the United States the sum of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the United States. (See 31 U.S.C. 3729.) | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS Imprisonment for not more than five years and shall be subject to a fine of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the United States. (See 18 U.S.C. 287.) |
|---|---|

95-108
Previous editions not usable

NAN 7540-00-4046

STANDARD FORM 95 (Rev. 7-85)
PRESCRIBED BY DEPT. OF JUSTICE
28 C.F.R. 14-2

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.

a. Authority: The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301,28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R., Part 14.

b. Principal Purpose: The information requested is to be used in evaluating claims.

c. Routine Use. See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.

d. Effect of Failure to Respond: Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid".

## INSTRUCTIONS

### Complete all items – Insert the word NONE where applicable.

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR REASON OF THE INCIDENT, LEGAL REPRESENTATIVE AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM MONEY DAMAGES IN A SUM CERTAIN FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY, THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN **TWO YEARS** AFTER THE CLAIM ACCRUES.

Any instructions or information necessary in the preparation of your claim will be furnished, upon request, by the office indicated in item #1 on the reverse side. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplemental regulations also. If more than one agency is involved, please state each agency.

The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with said claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file claim for both personal injury and property damage, claim for both must be shown in item #12 of this form.

The amount claimed should be substantiated by competent evidence as follows:

a. In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

b. In support of claims for damage to property which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

c. In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

d. Failure to completely execute this form or to supply the requested material within two years from the date the allegations accrued may render your claim "invalid". A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.

**Failure to specify a sum certain will result in invalid presentation of your claim. And may result in forfeiture of your rights.**

Public reporting burden for this collection of information is estimated to average 15 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or other aspect of this collection of information, including suggestions for reducing this burden,

to: Director, Torts Branch
Civil Division
U.S. Department of Justice
Washington, DC 20530

and to the
Office of Management and Budget
Paperwork Reduction Project (1105-0008)
Washington, DC 20503

## INSURANCE COVERAGE

In order that subrogation claims are adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of his vehicle or property.

| 15. Do you carry accident insurance?  Yes, if yes, give name and address of insurance company (Number, street, city, State, and Zip Code) and policy number. | | No. |
|---|---|---|
| Yes. The vehicle is insured was insured under a family policy held by Emily Thornton, James Thornton and the Claimant Katrina B. Thornton. That policy was issued by Nationwide Mutual Fire Insurance Company, 7545 Midlothian Turnpike, Richmond, VA 23225. The Nationwide Claim Number relating to this incident is 53 45 Q 921896 03012005 41. | | |

| 16. Have you filed claim on your insurance carrier in this instance, and if so, is it full coverage or deductible? | 17. If deductible, state amount |
|---|---|
| Yes. | $250.00. |

| 18. If a claim has been filed with carrier, what action has your insurer taken or proposes to take with reference to your claim? (It is necessary that you ascertain these facts.) |
|---|
| Nationwide has paid for the repair of the vehicle but has not yet decided whether to file a lawsuit to recover the costs of what the Claimant still considers to be inadequate repairs. |

| 19. Do you carry public liability and property damage insurance?  Yes, if yes, give name and address of insurance carrier (Number, street, city, State, and Zip Code) and policy number. | No. |
|---|---|
| No. | |

SF 95 (Rev. 7-85) BACK

**\* U.S. GOVERNMENT PRINTING OFFICE: 1989--241-175**

| **CLAIM FOR DAMAGE, INJURY, OR DEATH** | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse for additional instructions | **FORM APPROVED** OMB No. 1105-0008 Expires 5-31-05 |

| 1. Submit To Appropriate Federal Agency | 2. Name, Address of claimant and claimant's personal representative, if any. (See instructions on reverse.) (Number, street, city, State, and Zip Code) |
|---|---|
| Office of the Legal Adviser<br>Suite 203, South Building<br>2430 E Street, N.W.<br>Washington, DC 20037-2800 | DARREN L. CHISLEY<br>6406 Wilcox Court<br>Alexandria, VA 22310<br>Attorney and Personal Representative:<br>Arya Mohsen, Esq., Maloney & Mohsen PLLC,<br>4201 Connecticut Avenue, NW, Suite 500,<br>Washington, DC 20008-1163   (202) 237-6800 Ext. 203 |

| 3. TYPE OF EMPLOYMENT<br>Military___ Civilian ☑ | 4. DATE OF BIRTH<br>8/27/1972 | 5. MARITAL STATUS<br>Unmarried | 6 DATE AND DAY OF ACCIDENT<br>Tuesday, March 1, 2005 | 7. TIME (A.M. OR P.M.)<br>10:00 a.m. |

8. BASIS OF CLAIM (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof.) (Use additional pages if necessary.)

As is indicated by the attached Metropolitan Police of the District of Columbia *Traffic Accident Report*, at approximately 10:00 a.m., on March 1, 2005, the Claimant Darren L. Chisley was a passenger in a vehicle being driven by Katrina B. Thornton in an eastbound direction along I (Eye) Street, S.W., in Washington, D.C. In the traffic lane immediately to Ms. Thornton's left was a United States Department of State shuttle bus which was also being driven in an eastbound direction along I (Eye) Street, S.W., by Theodore Allen, Jr.

As both vehicles were entering the intersection of I (Eye) Street, S.W., and Half Street, S.W., Mr. Allen – without first changing to the right-hand lane – attempted to make a right-hand turn on to Half Street, S.W. As a consequence of this improper attempt to make a right-hand turn, Mr. Allen's shuttle bus collided with that being driven by Ms. Thornton's vehicle – in which the Claimant Darren L. Chisley was then a passenger. Mr. Allen was subsequently issued a traffic ticket by an officer of the Metropolitan Police whose name appears to be L.E. Armistead (Badge No. 3374).

| 9. | **PROPERTY DAMAGE** |
|---|---|

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, street, city, State, and Zip Code)
Not applicable.

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE, AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. (See instructions on reverse side.)
Not applicable

| 10. | **PERSONAL INJURY/WRONGFUL DEATH** |
|---|---|

STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT.

As is set forth with greater specificity in the attached medical records, as a result of the force of the collision, the Claimant Darren L. Chisley suffered pain and difficulty in movement in the neck, chest, and back which was possibly caused by cervical sprain/strain, thoracic sprain/strain, lumbosacral sprain/strain, ligament laxity, and paraspinal myofascitis.

| 11. | **WITNESSES** | |
|---|---|---|
| NAME | ADDRESS (Number, street, city, State, and Zip Code) | |
| Darren L. Chisley<br>Katrina B. Thornton<br>Officer L.E. Armistead (Badge No. 3374) | 6406 Wilcox Court, Alexandria, VA 22310<br>6406 Wilcox Court, Alexandria, VA 22310<br>D.C. Metropolitan Police, 415 Fourth Street, S.W., Washington, DC 20024 | |

12. (See instructions on reverse)

**AMOUNT OF CLAIM (in dollars)**

| 12a. PROPERTY DAMAGE<br>Inapplicable. | 12b. PERSONAL INJURY<br>$250,000.00 | 12c. WRONGFUL DEATH<br>Inapplicable. | 12d. TOTAL (Failure to specify may cause forfeiture of your rights.)<br>$250,000.00 |
|---|---|---|---|

I CERTIFY THAT THE AMOUNT OF CLAIM COVER SONLY DAMAGES AND INJURIES CAUSED BY THE ACCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side.)<br>*Darren L. Chisley* | 13b. Phone number of signatory<br>(703) 317-0503 | 14. DATE OF CLAIM<br>May 19, 2005 |
|---|---|---|

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant shall forfeit and pay to the United States the sum of not less than $5,000 and not more that $10,000, plus 3 times the amount of damages sustained by the United States. (See 31 U.S.C. 3729.) | Imprisonment for not more than five years and shall be subject to a fine of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages caused by the United States. (See 18 U.S.C. 287.) |

| 95-108<br>Previous editions not usable | NAN 7540-00-4046 | STANDARD FORM 95 (Rev. 7-85)<br>PRESCRIBED BY DEPT. OF JUSTICE<br>28 C.F.R. 14-2 |

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.

**a. Authority:** The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301,28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R., Part 14.

**b. Principal Purpose:** The information requested is to be used in evaluating claims.

**c. Routine Use:** See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.

**d. Effect of Failure to Respond:** Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid".

## INSTRUCTIONS

### Complete all items – Insert the word NONE where applicable.

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR REASON OF THE INCIDENT, LEGAL REPRESENTATIVE AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY DAMAGES IN A SUM CERTAIN FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN **TWO YEARS** AFTER THE CLAIM ACCRUES.

Any instructions or information necessary in the preparation of your claim will be furnished, upon request, by the office indicated in item #1 on the reverse side. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplemental regulations also. If more than one agency is involved, please state each agency.

The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with said claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file claim for both personal injury and property damage, claim for both must be shown in item #12 of this form.

The amount claimed should be substantiated by competent evidence as follows:

**a.** In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

**b.** In support of claims for damage to property which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

**c.** In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

**d.** Failure to completely execute this form or to supply the requested material within two years from the date the allegations accrued may render your claim "invalid". A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.

**Failure to specify a sum certain will result in invalid presentation of your claim. And may result in forfeiture of your rights.**

Public reporting burden for this collection of information is estimated to average 15 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or other aspect of this collection of information, including suggestions for reducing this burden,

to: Director, Torts Branch
Civil Division
U.S. Department of Justice
Washington, DC 20530

and to the
Office of Management and Budget
Paperwork Reduction Project (1105-0008)
Washington, DC 20503

## INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of his vehicle or property.

| | |
|---|---|
| **15. Do you carry accident insurance?** Yes, if yes, give name and address of insurance company *(Number, street, city, State, and Zip Code)* and policy number. | **No.** |

**No.**

| | **17. If deductible, state amount** |
|---|---|
| **16. Have you filed claim on your insurance carrier in this instance, and if so, is it full coverage or deductible?** | Inapplicable. |

Inapplicable.

**18. If a claim has been filed with carrier, what action has your insurer taken or proposes to take with reference to your claim? (It is necessary that you ascertain these facts.)**

Inapplicable.

| | |
|---|---|
| **19. Do you carry public liability and property damage insurance?** Yes, if yes, give name and address of insurance carrier *(Number, street, city, State, and Zip Code)* and policy number. | **No.** |

**No.**

SF 95 (Rev. 7-85) BACK

**\* U.S. GOVERNMENT PRINTING OFFICE: 1989--241-175**

# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| DARREN L. CHISLEY, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 06-1910 (HHK) |
| | ) | |
| UNITED STATES OF AMERICA, ) | | |
| | ) | |
| Defendant. | ) | |

## DECLARATION OF VINCE J. CHAVERINI

I, Vince J. Chaverini, pursuant to Title 28, Section 1746 of the United States Code, declare the following:

1. I am a Division Chief responsible for the award and administration of contracts for the Department of State ("DOS"), Office of Acquisition Management, P.O. Box 9115, Rosslyn Station, Arlington, Virginia, 22219.

2. I am responsible for administering contract programs worldwide.

3. DOS entered into a contract with Skyhawk Logistics, Inc. (hereinafter "Skyhawk"), a corporation organized and existing under the laws of the State of Maryland, for the provision of commercial driver services for operation of DOS' shuttle bus service. (See Attachment 1, excerpts of contract).

4. DOS and Skyhawk executed the aforementioned contact on February 15, 2001 for a one year base period with four option periods. The contract ended on January 31, 2007.

5. Neither I nor the employees of DOS control or supervise or have ever supervised the day-to-day operations of Skyhawk or its employees in its performance of the aforementioned contract.

6. While the contract sets forth requirements that Skyhawk must abide by, Skyhawk retains (and has always retained) exclusive authority to control, command, direct, oversee and supervise the conduct of its own employees.

I declare under the penalty of perjury that the foregoing is true and correct based upon my personal knowledge, information, and belief.

Executed this 7th day of February, 2007.

Vince J. Chaverini
Department of State
Division Chief, Worldwide Operations Division
Office of Acquisition Management

# ATTACHMENT 1

| AWARD/CONTRACT | 1. THIS CONTRACT IS A RATED ORDER UNDER DPAS (15 CFR 350) | RATING N/A | PAGE 1 | OF PAGES 38 |
|---|---|---|---|---|

| 2. CONTRACT (Proc. Inst. Ident.) NO. S-LMAQM-01-D-0016 | 3. EFFECTIVE DATE | 4. REQUISITION/PURCHASE REQUEST/PROJECT NO. |
|---|---|---|

| 5. ISSUED BY                           CODE | 6. ADMINISTERED BY (if other than item 6)       CODE |
|---|---|
| U. S. Department of State<br>Office of Acquisition<br>P.C. Box 9115, Rosslyn Station<br>Arlington, VA  22219 | |

| 7. NAME AND ADDRESS OF CONTRACTOR (No. street, county, state and ZIP Code) | 8. DELIVERY  **Destination** |
|---|---|

Skyhawk Logistics, Inc.
1110 Bonifant Street
Suite 501
Silver Spring, MD 20910

Duns No. 187373162       TIN 52-1450528

8. DELIVERY  **Destination**
☐ FOB ORIGIN  ☒ OTHER (See

9. DISCOUNT FOR PROMPT PAYMENT

NET 30 DAYS

10. SUBMIT INVOICES (4 copies unless otherwise specified) TO THE ADDRESS SHOWN IN:    ITEM
► Item 12

| CODE | FACILITY CODE |
|---|---|

| 11  SHIP TO/MARK FOR                    CODE | 12. PAYMENT WILL BE MADE BY                      CODE |
|---|---|
| Refer to Section G.1 of the Contract | U.S. Department of State, Payments Division<br>Internal Control Branch, P.O. Box 9487<br>Rosslyn Station, Arlington, VA 22219 |

| 13. AUTHORITY FOR USING OTHER FULL AND OPEN COMPETITION<br>15 U.S.C. 637(a)<br>☐ 10 U.S.C. 2304(c)(    )  ☒ 41 U.S.C. 253(c)( 5 ) | 14. ACCOUNTING AND APPROPRIATION DATA<br>To be cited on Delivery Orders. |
|---|---|

| 15A. ITEM NO | 15B. SUPPLIES/SERVICES | 15C. QUANTITY | 15D. UNIT | 15E. UNIT PRICE | 15F. AMOUNT |
|---|---|---|---|---|---|
| | The Contractor shall provide comercial driver services for operation of the U. S. Department of State shuttle bus service.  Services under this contract will be ordered via Delivery Orders authorized by the Contracting Officer. | | | | |

**15G. TOTAL AMOUNT OF CONTRACT**  ►  $

### 16. TABLE OF CONTENTS

| (✓) | SEC | DESCRIPTION | PAGE(S) | (✓) | SEC | DESCRIPTION | PAGE(S) |
|---|---|---|---|---|---|---|---|
| | | **PART I - THE SCHEDULE** | | | | **PART II - CONTRACT CLAUSES** | |
| X | A | SOLICITATION/CONTRACT FORM | 1-1A | X | I | CONTRACT CLAUSES | 29-37 |
| X | B | SUPPLIES OR SERVICES AND PRICE/COST | 2-7 | | | **PART III - LIST OF DOCUMENTS, EXHIBITS AND OTHER ATTACH.** | |
| X | C | DESCRIPTION/SPECS./WORK STATEMENT | 8-16 | X | J | LIST OF ATTACHMENTS | 38 |
| X | D | PACKAGING AND MARKING | 17 | | | **PART IV - REPRESENTATIONS AND INSTRUCTIONS** | |
| X | E | INSPECTION AND ACCEPTANCE | 18 | | K | REPRESENTATIONS, CERTIFICATIONS | |
| X | F | DELIVERIES OR PERFORMANCE | 19 | | | AND OTHER STATEMENTS OF OFFERORS | |
| X | G | CONTRACT ADMINISTRATION DATA | 20-22 | | L | INSTRS., CONDS., AND NOTICES TO OFFERORS | |
| X | H | SPECIAL CONTRACT REQUIREMENTS | 23-28 | | M | EVALUATION FACTORS FOR AWARD | |

*CONTRACTING OFFICER WILL COMPLETE ITEM 17 OR 18 AS APPLICABLE*

| 17. ☒  CONTRACTOR'S NEGOTIATED AGREEMENT (Contractor is required to sign this document and return 5 copies to issuing office.) Contractor agrees to furnish and deliver all items or perform all the services set forth or otherwise identified above and on any continuation sheets for the consideration stated herein.  The rights and obligations of the parties to this contract shall be subject to and governed by the following documents: (a) this award/contract, (b) the solicitation, if any, and (c) such provisions, representations, certifications, and specifications, as are attached or incorporated by reference herein. (Attachments are listed herein.) | 18. ☐  AWARD (Contractor is not required to sign this document.) Your offer on Solicitation Number<br><br>including the additions or changes made by you which additions or changes are set forth in full above, is hereby accepted as to the items listed above and on any continuation sheets.  This award consummates the contract which consists of the following documents: (a) the Government's solicitation and your offer, and (b) this award/contract. No further contractual document is necessary. |
|---|---|

| 19A. NAME AND TITLE OF SIGNER  (Type or print)<br>SEE PAGE 1A | 20A. NAME OF CONTRACTING OFFICER<br>SEE PAGE 1A |
|---|---|
| 19B  NAME OF CONTRACTOR | 19C  DATE SIGNED | 20B. UNITED STATES OF AMERICA | 20C. DATE SIGNED |
| BY _____<br>(Signature of person authorized to sign) | | BY _____<br>(Signature of Contracting Officer) | |

| NSN 7540-01-152-8069<br>PREVIOUS EDITION UNUSABLE | 26-107 | STANDARD FORM 26 (REV. 4-85)<br>Prescribed by GSA<br>FAR (48 CFR) 53.214(a) |
|---|---|---|

OMB Approval 2700-0042

U. S. Department of State
Contract No. S-LMAQM-01-D-0016

<u>PART I - SCHEDULE</u>

<u>SECTION A - SOLICITATION/CONTRACT FORM</u>

U. S. Department of State Contract Number:  <u>S-LMAQM-01-D-0016</u>

U. S. Small Business Administration Acceptance Number:  <u>0353-01-00170</u>

<u>TRIPATITE AGREEMENT</u>

<u>SIGNATURE PAGE</u>

Contractor:

Signature

Name:  O. Jimmy Ogundiya

Title:  President  CEO

Date: 2/15/2001

United States Department of State
Office of Small Disadvantaged Business Utilization:

Signature:  SHAPLEIGH C. DRISKO

Name:  C. C. M.

Title:  CONTRACTING OFFICER
DOS / A / SDBU

Date: FEB 1 5 2001

United States Department of State
Office of Acquisition Management

Signature:

Name:  Vincent S. Chaveori, Jr.

Title:  Contracting Officer

Date: 2/15/01

1A

U. S. Department of ι .te
Solicitation No. S-LMAQM-01-R-0016

<u>PART I - SCHEDULE</u>

<u>SECTION C — DESCRIPTION/SPECIFICATIONS/WORK STATEMENT</u>

C.1.  INCORPORATION OF CONTRACTOR'S TECHNICAL PROPOSAL (05/95)

1.    The Contractor shall perform this contract in accordance with its technical proposal dated **(to be inserted at contract award)** and any revisions thereto submitted in response to Solicitation No. S-OPRAQ-01-R-0016.

2.    The Contractor's technical proposal is incorporated by reference and hereby made subject to the provisions of the "ORDER OF PRECEDENCE" clause in SECTION I of this contract.  Under the "ORDER OF PRECEDENCE" clause, the Contractor's technical proposal shall follow "the specifications" in the order of precedence.

C.2.  <u>SCOPE</u>.  The purpose of this contract is for Contractor provision of shuttle bus driver services for operation of the Department of State (DOS) shuttle bus services.  The shuttle bus service, which is for DOS employees and official visitors, interconnects DOS's Headquarters Building located at 23rd and "D" Streets NW with various DOS annex facilities as specified in this contract.

C.3.  <u>REQUIREMENT</u>

1.    The Contractor shall provide all personnel, supervision, and any other items or services necessary to perform all services required under this contract.  Shuttle bus driver support is required to operate DOS-provided shuttle vehicles for transporting DOS passengers on set routes.  DOS has made every reasonable effort to determine the number and location of facilities to be interconnected by such services, but reserves the right to make such adjustments as may be necessary to meet the needs of DOS.  Authorizations for shuttle use and identification requirements, if any, shall be determined by DOS and communicated to the Contractor.  DOS reserves the right to accept or deny any passengers seeking to ride shuttles provided under this contract.  The *Contractor* shall comply with DOS shuttle use and personal identification policies at all times.

2.    The shuttle bus driver support services to be provided under this contract shall be comprised of three shuttle routes termed as follows:

**(a) Shuttle Route I** - Service interconnecting DOS headquarters at 2201 C Street, NW, Washington, DC with various facilities located in the Rosslyn area of Arlington County, Virginia.  Route I may be otherwise known as the **"Rosslyn Shuttle Route."**

**(b) Shuttle Route II** - Service interconnecting DOS headquarters at 2201 C Street, NW, Washington, DC with DOS Annex facility SA-39 located at 1700 N. Moore Street in the Rosslyn, Virginia and DOS's National Foreign Affairs Training Center (NFATC) located at 4020 Arlington Blvd. (Arlington Hall site), Rosslyn, Virginia, in close proximity to the intersection of US Route 50 East and South George Mason Drive.  Route II may be otherwise known as the **"NFATC Shuttle Route."**

**(c) Shuttle Route III** - Service interconnecting DOS headquarters at 2201 C Street, NW, Washington, DC with DOS Annex facility SA-44 at 301 4th Street, SW, Washington, DC. Route III may be otherwise known as the **"Main State / SA-44 Shuttle Route"**.

*NOTE: All shuttle routes originate at "D" Street entrance to DOS headquarters building except as noted in OPERATIONS SCHEDULES, TIMES & DISTANCES*

U. S. Department of ~ te
Solicitation No. S-LMAQM-01-R-0016

## PART I - SCHEDULE

## SECTION C — DESCRIPTION/SPECIFICATIONS/WORK STATEMENT

### C.4.    SHUTTLE OPERATIONS SCHEDULES, AND TIMES & DISTANCES

1.  All of the information contained in this section is based on projections of requirements made by DOS.  While every effort has been made to describe requirements accurately, DOS makes no guarantee that requirements defined herein will remain unchanged, and DOS reserves the right to make such changes as may be necessary.

2.  The charts that follow provide estimated distances, trip frequency and operating times.  It should be noted that a "TRIP," as shown in the matrix, constitutes one complete round-trip circuit to a point(s) of destination and return to a point of origin (round trip):

**(a) Shuttle Route I - Rosslyn Shuttle Service:** The projected mileage, operating hours and trip frequency (estimated) are as follows:

| MILES PER TRIP | TRIPS PER DAY | HOURS PER DAY | START TIME | END TIME |
|---|---|---|---|---|
| 5.3 | 35 | 9.5 | 08:15 AM | 05:31 PM |

(1) "Rosslyn Shuttle Service": The schedule for Rosslyn shuttle service is incorporated into this contract as Attachment Number 1 for schedule number 1 and attachment number 2 for schedule number 2.

(2) The driver for Schedule Number # 1 must report to Arlington Hall (NFATC) at 4020 Arlington Blvd. (SA-42) at 07:00 to obtain his/her bus for the route. Driver is required to check in with the DOS dispatcher via two-way radio or cellular telephone to confirm arrival.  Pretrip inspections will be performed at bus parking lot.  After bus has been inspected, the driver must drive his/her bus to DOS headquarters (Main State) "D" Street for staging.  The bus for the 08:15 departure must be staged at "D" Street (Main State) by 08:00am each morning. Schedule Number 1 terminates at 1700 N. Moore Street (SA-39) in Rosslyn, Virginia.  When route is completed, bus will be returned to Arlington Hall (SA-42) for overnight parking.

(3) The driver for Schedule Number # 2 must report to Arlington Hall (NFATC) at 4020 Arlington Blvd. (SA-42) at 07:15 to obtain his/her bus for the route. Driver is required to check in with the DOS dispatcher via two-way radio or cellular telephone to confirm arrival.  Pretrip inspections will be performed at bus parking lot.  After bus has been inspected, the driver must drive his/her bus to DOS headquarters "D" Street (Main State) for staging.  The bus for the 08:30 departure must be staged at "D" Street (Main State) by 08:15am each morning. Schedule Number 2 terminates at "D" Street at DOS headquarters facility in Washington, DC (Main State).  When route is completed, bus will be returned to Arlington Hall (SA-42) for overnight parking.

**(b) Shuttle Route II - NFATC Shuttle Service.**  The projected mileage, operating hours and trip frequency (estimated) are as follows:

| MILES PER TRIP | TRIPS PER DAY | HOURS PER DAY | START TIME | END TIME |
|---|---|---|---|---|
| 11.7 | 25 | 10.5 | 07:00 AM | 05:30 PM |

(1) "NFATC Shuttle Service": The schedule for NFATC shuttle service is incorporated into this contract as Attachment Number # 3 for Schedule Number # 1,

U. S. Department of ( .te
Solicitation No. S-LMAQM-01-R-0016

## PART I - SCHEDULE

### SECTION C — DESCRIPTION/SPECIFICATIONS/WORK STATEMENT

attachment Number # 4 for Schedule Number 2, and attachment Number # 5 for Schedule Number # 3.

(2) The driver for Schedule Number # 1 must report to Arlington Hall (NFATC) at 4020 Arlington Blvd.. (SA-42) at 06:40am to obtain his/her bus for the route. Driver is required to check in with the DOS dispatcher via two-way radio or cellular telephone to confirm arrival. Pretrip inspections will be performed at bus parking lot. After bus has been inspected, the driver must drive his/her bus to DOS headquarters "D" Street (Main State) for staging. The bus for the 07:55am departure must be staged at "D" Street (Main State) by 07:40am each morning. Schedule Number 1 terminates at 4020 Arlington Blvd. (SA-42) in Rosslyn, Virginia. When route is completed, bus will be returned to the overnight parking lot at Arlington Hall (SA-42).

(3) The driver for Schedule Number # 2 must report to Arlington Hall (NFATC) at 4020 Arlington Blvd. (SA-42) at 07:10am to obtain his/her bus for the route. Driver is required to check in with the DOS dispatcher via two-way radio or cellular telephone to confirm arrival. Pretrip inspections will be performed at bus parking lot. After bus has been inspected, the driver must drive his/her bus to SA-39 (1700 N. Moore Street, Rosslyn, Virginia) for staging by 07:55am. Schedule Number 2 terminates at "D" Street at DOS headquarters facility in Washington, DC (Main State). When route is completed, bus will be returned to the overnight parking lot at Arlington Hall (SA-42).

(4) The driver for the **AM Schedule Number # 3** must report to Arlington Hall (NFATC) at 4020 Arlington Blvd. (SA-42) at 06:00am to obtain his/her bus for the route. Driver is required to check in with the DOS dispatcher via two-way radio or cellular telephone to confirm arrival. Pretrip inspections will be performed at bus parking lot. After bus has been inspected, the driver must drive his/her bus to DOS headquarters "D" Street (Main State) for staging by 06:45am. The AM schedule Number 3 runs terminate at 09:40 am at 4020 Arlington Blvd. (SA-42) in Rosslyn, Virginia. When AM schedule terminates, bus will be parked at normal bus parking lot at Arlington Hall (SA-39) until afternoon schedule begins.

(5) The driver for the **PM Schedule Number # 3** will report to Arlington Hall (NFATC) at 4020 Arlington Blvd. (SA-42) at 4:00pm to obtain his/her bus for the route. Driver is required to check in with the DOS dispatcher via two-way radio or cellular telephone to confirm arrival. Pretrip inspections will be performed at bus parking lot. After bus has been inspected, the driver must drive his/her bus to staging area at 4020 Arlington Blvd. (SA-42). The PM schedule Number 3 terminates at "D" Street at DOS headquarters facility in Washington, DC (Main State) however, if there are no passengers on bus when bus departs the SA-39 stop at 1700 N. Moore Street in Rosslyn, Virginia, driver is authorized to return to the overnight parking lot at Arlington Hall (SA-42).

NOTE: STAGING LOCATIONS AT NFATC (SA-42) IS AT THE "VISITOR CENTER"

(c) **Shuttle Route III - Main State / SA-44 Shuttle Service**. The projected mileage, operating hours and trip frequency (estimated) are as follows:

| MILES PER TRIP | TRIPS PER DAY | HOURS PER DAY | START TIME | END TIME |
|---|---|---|---|---|
| 6.2 | 18 | 9.0 | 08:00 AM | 05:25 PM |

U. S. Department of \ .te
Solicitation No. S-LMAQM-01-R-0016

### PART I – SCHEDULE

### SECTION C — DESCRIPTION/SPECIFICATIONS/WORK STATEMENT

(1) "Main State – SA-44": The schedule for the Main State to SA-44 (301 4th Street SW, Washington, DC) shuttle service is incorporated into this contract as Attachment Number # 6 for Schedule Number # 1 and attachment Number # 7 for Schedule Number # 2.

(2) The driver for Schedule Number # 1 must report to Arlington Hall (NFATC) at 4020 Arlington Blvd. (SA-42) at 06:40am to obtain his/her bus for the route. Driver is required to check in with the DOS dispatcher via two-way radio or cellular telephone to confirm arrival. Pretrip inspections will be performed at bus parking lot. After bus has been inspected, the driver must drive his/her bus to 301 4th Street SW, Washington, DC (SA-44) for staging. The bus for the 08:00am departure must be staged at in front of SA-44 by 07:40am each morning. Schedule Number 1 terminates at SA-44. When route is completed, bus will be returned to the overnight parking lot at Arlington Hall (SA-42).

(3) The driver for Schedule Number # 2 must report to Arlington Hall (NFATC) at 4020 Arlington Blvd. (SA-42) at 07:20am to obtain his/her bus for the route. Driver is required to check in with the DOS dispatcher via two-way radio or cellular telephone to confirm arrival. Pretrip inspections will be performed at bus parking lot. After bus has been inspected, the driver must drive his/her bus to 301 4th Street SW, Washington, DC (SA-44) for staging. The bus for the 08:30am departure must be staged at in front of SA-44 by 08:20am each morning. Schedule Number 2 terminates at SA-44. When route is completed, bus will be returned to the overnight parking lot at Arlington Hall (SA-42).

### C.4.   CONTRACTOR PERSONNEL REQUIREMENTS.

The Contractor shall provide skilled personnel as well as the off-site supervisory, management, and administrative services necessary to successfully meet the Government's requirements. The following general personnel requirements will apply:

**1.   Key Personnel.** The skill categories listed below are essential for successful Contractor performance of this contract. The Contractor will assign personnel to the noted positions as follows (minimum requirement):

- Program Manager (off-site).
- Rosslyn Shuttle Route I – 2 Shuttle Bus Drivers full time.
- NFATC Shuttle Route II – 2 Shuttle Drivers full time; 1 part-time Shuttle Bus Driver for Schedule Number 3 (approximately 5.5 hours).
- Main State/SA-44 Shuttle Route III – 2 Shuttle Bus Drivers full time.
- Shuttle Bus Driver to cover lunch relief for Rosslyn and NFATC Shuttle Bus Drivers.

(a) Key personnel will not be subcontracted personnel, but must be employed directly by the Contractor.

(b) Key personnel will not be removed, replaced, or reassigned, either permanently or temporarily, without 24 hour advance notification to the COR, where possible. If one or more of the key personnel is unavailable for work under this contract for a continuous period exceeding 24 hours, the Contractor will immediately notify the COR and must be replaced within 24 hours from the date of the vacancy with personnel of EQUAL or GREATER qualifications to the personnel being replaced.

(c) The Contractor's Program Manager shall be well versed in all aspects of

U. S. Department of ʼ. .te
Solicitation No. S-LMAQM-01-R-0016

### PART I – SCHEDULE

### SECTION C — DESCRIPTION/SPECIFICATIONS/WORK STATEMENT

the requirements outlined herein, will be readily accessible as the need arises, and will be the overall point of contact for the DOS Contracting Officer and/or his/her designee.

(d) The Contractor will designate an alternate in the event of an absence of the primary point of contact. The Contractor will provide a list of primary and alternate drivers assigned to this contract and will provide driving records for each individual.

(e) The Contractor shall be responsible for all federal requirements associated with the medical certification and drug testing for all driver personnel assigned to this contract. Contractor shall ensure that drivers are administered a DOT approved medical examination bi-annually and a copy of drivers medical certification is forwarded to the Contracting Officer for file.

(f) The Contractor shall not employ any person in this contract who is an employee of the U.S. Government if employment of that person would create the appearance of a conflict of interest.

(g) The Contractor shall not employ on this contract any person who is a former employee of DOS without prior approval of the COR.

(h) The Contractor shall provide backup drivers with qualifications that meet the requirements of this contract on an as-needed basis. Backup drivers shall be available within one (1) hour in the absence of the primary driver. The routes shall start not later than one (1) hour after designated start times each day. If the Contractor cannot provide a driver on time, for any reason, the COR shall be notified a minimum of 24 hours in advance.

(i) The Contractor shall maintain business office hours in the Washington, D.C. metropolitan area where responsible individuals within the company can be contacted to resolve contractual issues.

(j) The Contractor shall execute, and cause each of its employees under the contract with DOS, to execute, such forms as may be necessary for security or other reasons. Upon request of the COR, the Contractor shall supply, at no cost to the Government, employee fingerprints.

(k) Contractor employees shall maintain a fuel and mileage log for assigned vehicles. Such logs will be provided by the COR and logs are to be turned in to COR by the 5th day of each month.

(l) Contractor shall be required to perform a quarterly passenger count survey on dates to be provided by the COR. Survey will be done for a minimum of a two week calendar period. Forms will be provided by COR.

### C.5.   SHUTTLE BUS DRIVERS/OPERATORS

### 1.   QUALIFICATIONS

(a)  Drivers provided by the *Contractor* for purposes of operating motor equipment (buses) under this contract shall be fully trained and possess not less than two (2) years of work experience driving similar passenger shuttles/buses. All drivers provided shall possess a valid CLASS B Commercial Driver's License with passenger endorsement, and, if applicable, no air brake restriction. All drivers shall be sufficiently conversant in standard English to answer questions posed by the Contract Officer's Representative (*COR*) and passengers as to timetables, destinations, routing, *Contractor* policies, applicable DOS policies and rules, and the operation of buses and all

U. S. Department of [    ]te
Solicitation No. S-LMAQM-01-R-0016

## PART I – SCHEDULE

### SECTION C – DESCRIPTION/SPECIFICATIONS/WORK STATEMENT

equipment.

(b)  Drivers provided by the Contractor shall possess no more than 1 minor traffic violations over the past 12 calendar months.  If a driver has been convicted of a more serious driving violation within the past 24 months (e.g., reckless driving, driving under the influence of alcohol, controlled substances, etc.) the Contractor shall not propose them for work under this contract. The driver cannot be considered for work under this contract if their driver's license has been suspended by the District of Columbia, or by any state.  Drivers must present a professional appearance and courteous attitude at all times while on or around DOS property or shuttle vehicles.

### 2.  PERFORMANCE REQUIREMENTS

Drivers provided by the *Contractor* for purposes of operating motor equipment (buses) under this contract shall comply with the following performance requirements:

- Contractor drivers shall operate the shuttle vehicle at all times in a responsible and competent fashion.
- Drivers shall have in their possession, at all times while on duty, a current driver's license for operating passenger shuttle vehicles in the District of Columbia or any other state.
- Drivers shall wear a distinctive uniform including employee's name and the company logo, which will present a neat and professional appearance at all times while on duty.
- Drivers shall be courteous and helpful at all times to individuals who ride the shuttle and shall not engage in verbal or physical altercations with passengers or prospective riders.
- Drivers shall not engage in conversation with passengers while the vehicle is in motion other than to briefly answer questions concerning shuttle operations.
- Drivers shall immediately report any problems to the COR.
- Drivers shall not use audio devices of any kind, except two-way radio, which may be used to communicate with DOS dispatcher office or the COR. Station WTOP, easy listening, or other news-related station may be set on the radio of the bus.
- All Contractor drivers shall be physically able to perform all general duties, functions, and activities required under this contract, to include the daily operation of the handicapped lift and restraint systems.
- Contractor drivers shall take no lunches or breaks on the shuttle vehicle.
- All Contractor drivers shall carry on their possession a current Department of Transportation medical certification.
- Contractor drivers shall perform a daily pre-trip maintenance inspection following the checklist to be provided by the COR.
- Contractor drivers shall maintain two-way communication between the shuttle vehicle and a dispatcher located in the DOS motor pool.  The driver shall check in at the start of his/her tour of duty and at any other time to inform dispatchers of road hazards and weather conditions.
- Contract drivers shall not permit passengers to eat, drink or carry lighted tobacco products on buses.  Operators shall politely remind offending passengers of the prohibition once and once only.  Passenger refusals to comply shall be reported by the operator to *Contractor* management within sixty minutes for immediate referral to the *COR*.

U. S. Department of State
Solicitation No. S-LMAQM-01-R-0016

PART I - SCHEDULE

SECTION C — DESCRIPTION/SPECIFICATIONS/WORK STATEMENT

3. UNIFORMS

All operators shall be neat, clean and presentable at all times. All operators shall be attired in uniforms that meet the following description.

- dark , solid color trousers
- light, solid color shirt/blouse
- dark, solid color necktie (bow or cravat)
- dark socks/stockings
- black or brown leather shoes
- clip-on name tag  to be worn on upper left-hand chest area (name tags shall bear at least the operator's surname-- given name, company logo, polite title optional)

The *contractor* shall determine colors of  uniform clothing  pursuant to the guidelines prescribed herein and ensure that operators are identically attired at all times.  Complimentary dark, monochrome coats, jackets, sweaters and vests may be worn to the extent that the wearing of such clothing is consistent with the *contractor's*  operating policies.

4. OPERATOR COURTESY AND PASSENGER RELATIONS

All  operators shall be courteous and respectful in treatment of passengers, and shall avoid verbal disagreements or other altercations. Belligerent, disrespectful or other undesirable treatment of operators by passengers shall not elicit reciprocal responses from operators.

In the event that a passenger is abusive, disrespectful or unruly in his/her conduct toward the operator or other passengers, the operator should decline any response except to say that he/she is required to report to his/her supervisor.  Operators shall report difficulties with passengers to the *contractor's* designee for handling and referral to the *COR* or his/her designee.

Abusive or vulgar language and/or belligerent or disrespectful treatment of passengers or any *State* personnel or official guests by an operator shall be grounds for terminating the operator's service under the contract.  The *contractor* shall comply with requests by the *COR* for the termination of operator services where the *COR* has determined operator conduct to be inappropriate pursuant to provisions of this subsection.  All requests for operator termination shall be made in writing.

The adjudication of conflicts and resolution of passenger relations difficulties shall be performed in a manner prescribed by the *COR*.

5. PASSENGER SCREENING AND EQUIPMENT SURVEILLANCE

All operators provided by the contractor shall screen all passengers prior to admittance to motor equipment.  In order to be eligible for admittance, all passengers must meet one or more of the following criteria/conditions:

- possess a valid identification card establishing his/her employment with the US Department of State or the Agency for International Development
- possess a valid US Diplomatic Passport
- be escorted by someone who possesses one of the means of

-14-

U. S. Department of_ .te
Solicitation No. S-LMAQM-01-R-0016

PART I — SCHEDULE

SECTION C — DESCRIPTION/SPECIFICATIONS/WORK STATEMENT

    identification described in this section
- possess some other form of identification as may be prescribed by DOS as an acceptable form of identification

DOS reserves the right to make whatever changes are deemed appropriate to the list of acceptable forms of identification. All changes shall be communicated to the *contractor* in writing by the *COR*.

C.6. **GOVERNMENT PROVIDED EQUIPMENT**

1. The *Contractor* shall ensure that all motor equipment utilized under this contract is secure at all times during the shuttle service operating day. Operators shall remain with their assigned buses between trips except to make restroom trips or while on established breaks. When a bus must be left unattended for reasons described in this subsection, the operator shall secure the bus.

2. Operators who are observed leaving motor equipment unattended for what appears to be an inordinate number of restroom breaks or who fail to display the required sign shall be subject to removal from service under this contract, at the discretion of the *COR*. The *Contractor* shall comply with requests by the *COR* for the termination of operator services where the *COR* has determined operator conduct to be inappropriate pursuant to the provisions of this section and where such requests are submitted in writing.

3. DOS will provide the following for performance under this contract:

- GSA leased and/or agency owned government shuttle buses equipped with cellular phones and two-way radios; all maintenance and fuel
- On-site driver lounge for drivers in Room B-229 at Headquarters Building. Drivers lounge is equipped with chairs, television, microwave oven, coffee pots, eating area, refrigerator, and bathrooms.
- Security Pass to enter the DOS headquarters building
- Private parking at NFATC facility for contract drivers
- Shuttle route schedules
- All motor vehicle accessory equipment for cleaning and servicing buses

4. "Motor equipment" shall be defined as a motorized passenger bus which meets DOS mechanical standards. "Primary" equipment to be utilized for the performance of services under this contract shall be defined as that motor equipment which is set aside primarily for the services described in this section to support Route I, Route II and Route III. Refer to Section H, paragraph H.2 of the Contract for a list of Government-Furnished Property to be provided by the Government for use in the performance of the contract.

**(a)** **Route I** – Primary motor equipment to be utilized on Route I shall be a forward control, rear engine 29 – 31 passenger bus. Smaller or larger capacity buses may be substituted should the primary bus go out of service for maintenance or other mission priority requirements.

**(b)** **Route II** – Primary motor equipment to be utilized on Route II shall be a forward control, rear engine 35 – 44 passenger bus. Smaller or larger capacity buses may be substituted should primary bus go out of service for maintenance or other mission priority requirements.

**(c)** **Route III** – Primary motor equipment to be utilized on Route III shall be a forward control, forward engine 18 – 24 passenger mini-bus. Larger capacity

U. S. Department of ‚ .te
Solicitation No. S-LMAQM-01-R-0016

## PART I - SCHEDULE

### SECTION C — DESCRIPTION/SPECIFICATIONS/WORK STATEMENT

buses may be substituted should primary bus go out of service for maintenance or other mission priority requirements.

5.  ROUTE DISPLAY SIGNS

(a) Route I  ("Rosslyn Shuttle Service") motor equipment shall be set in the front route display marquee the following information:

      (when outbound from headquarters):   **STATE-ROSS**
      (when inbound from Rosslyn):   **ROSS-STATE**

(b) Route II  ("NFATC Shuttle Service") buses shall be set in the front route display marquee the following information:

      (when outbound from headquarters):   **STATE-NFATC**
      (when inbound from NFATC):   **NFATC-STATE**

(c) Route III  -  ("Main State/SA-44 Shuttle Service") buses shall be set in the front route display marquee the following information:

      (when outbound from SA-44 to Main State): **SA-44 / Main State**
      (when outbound from Main State to SA-44)  **Main State / SA-44**

(d) When buses are in operation for purposes other than the transportation of passengers on the routes established in Section C, the *Contractor* shall ensure that route signs required under this section are blank or absent.

### C.7.  MOTOR VEHICLE VIOLATIONS

The Contractor shall be liable for any and all traffic violations incurred by Contractor's drivers while operating a vehicle under the terms of this contract.  Any penalties assessed as a result of said violations will be assumed by the Contractor and/or the Contractor's employees. As applicable.

U. S. Department of State
Solicitation No. S-LMAQM-01-R-0016

<u>**PART I - SCHEDULE**</u>

SECTION D — PACKAGING AND MARKING

# R E S E R V E D

U. S. Department of  te
Solicitation No. S-LMAQM-01-R-0016

<u>PART I - SCHEDULE</u>

<u>SECTION E — INSPECTION AND ACCEPTANCE</u>

E.1.  CLAUSES INCORPORATED BY REFERENCE

<u>FAR SOURCE</u>          <u>TITLE AND DATE</u>

52.246-4          INSPECTION OF SERVICES--FIXED-PRICE (AUG 1996)

E.2.  INSPECTION AND ACCEPTANCE — SERVICES (05/95)

Inspection and acceptance of the services to be provided hereunder shall be
made by the Contracting Officer's Representative.

U. S. Department of ⟨  ⟩te
Solicitation No. S-LMAQM-01-R-0016

## PART I – SCHEDULE

## SECTION F — DELIVERIES OR PERFORMANCE

**F.1.  CLAUSES INCORPORATED BY REFERENCE**

| FAR SOURCE | TITLE AND DATE |
|---|---|
| 52.242-15 | STOP-WORK ORDER (AUG 1989) |
| 52.242-17 | GOVERNMENT DELAY OF WORK (APR 1984) |
| 52.247-55 | F.O.B. POINT FOR DELIVERY OF GOVERNMENT-FURNISHED PROPERTY (APR 1984) |

**F.2.  PERIOD OF PERFORMANCE (05/95)**

This contract shall be effective on the date of the Contracting Officer's signature, and shall remain in effect for twelve (12) calendar months thereafter.

**F.3.  PLACE OF PERFORMANCE (05/95)**

The principal place of performance for this contract shall be:

    Washington, DC metropolitan area and Arlington, Virginia.

**F.4.  TIME OF PERFORMANCE (05/95)**

The Contractor shall perform the stated services for the number of hours per day as required to comply with schedules provided under this contract, Monday through Friday, excluding Government holidays.  Some Contractor personnel may be required to work alternate work shifts as specified elsewhere in this contract.

U. S. Department of    .te
Solicitation No. S-LMAQM-01-R-0016

### PART I - SCHEDULE

### SECTION H — SPECIAL CONTRACT REQUIREMENTS

H.1.  GOVERNMENT-FURNISHED EQUIPMENT AND SPACE (ON-SITE) (05/95)

For *Contractor* personnel performing work on Government premises, the Government shall provide: on-site drivers lounge in room B-229, Main State Building.

H.2.  GOVERNMENT-FURNISHED PROPERTY (05/95)

Notwithstanding any term or condition of this contract to the contrary, the Government will provide only that property set forth below for use in the performance of this contract.

| Description | Passenger Capacity | Quantity |
|---|---|---|
| Bus Forward Control, Rear Engine | 37 | 1 |
| Bus Forward Control, Rear Engine | 35 | 5 |
| Bus Forward Control, Rear Engine | 31 | 2 |
| Bus Forward Control, Rear Engine | 29 | 1 |
| Bus, Mini-Body, Forward Engine | 24 | 2 |
| Bus, Mini-Body, Forward Engine | 18 | 1 |

NOTE:  All of the above equipment will be made available for fulfilling the requirements of this contract; however, a maximum of 7 buses will be required for the shuttle routes.

H.3.  DAMAGE TO GOVERNMENT OWNED OR CONTROLLED PROPERTY

(a) The contractor shall be liable for the loss or damage to any government owned or controlled property which is caused by the Contractor or Contractor's employee(s) failure to exercise such care as a reasonable and prudent person would exercise.   The Contractor shall protect Government owned or controlled property in the Contractor's custody against all transportation and weather hazards and shall be liable for any loss resulting from such hazards.

(b) The Contractor shall report all accidents to the base station immediately. Before a vehicle involved in an accident can leave the scene of the accident, the driver must have a complete list of all passengers by name, phone number, and routing symbol. The driver shall also have enough information to be able to complete all appropriate accident reports.

(c) Accident reports, along with passenger list, shall be provided to the COTR within one hour of the accident. In addition, all drivers must cooperate fully and in a timely fashion with any future investigations or inquiries about accidents.

(d) In the event of an accident, the driver shall take all reasonable steps to assure the comfort and safety of the passengers.

U. S. Department of ( .te
Solicitation No. S-LMAQM-01-R-0016

<u>PART I - SCHEDULE</u>

<u>SECTION H — SPECIAL CONTRACT REQUIREMENTS</u>

H.4.  PERMITS AND RESPONSIBILITIES

(a) The Contractor shall, without additional expense to the Government, be responsible for obtaining all necessary permits and licenses, and for complying with any applicable Federal and local laws, codes, and regulations in connection with performance under this contract.

(b) The Washington Metropolitan Area Transit Commission requires a Certificate of Operation that must be issued prior to the start of this service. The Contractor shall provide evidence of eligibility for this certificate in their technical proposal, and upon award submit a copy of the Certificate of Operation to the Contracting Officer.

H.5. BUS CARE AND MAINTENANCE

(a)  Contract drivers are responsible for performing pre-trip and post-trip vehicle inspections, reporting maintenance problems on buses, informing the DOS Dispatcher when bus requires cleaning, and fueling buses as required. Drivers will follow the below standard operating procedures:

1) Report to vehicle one hour prior to operation (confirm arrival by contacting dispatch office via radio of arrival time.

2) Perform pre-trip inspection of bus in accordance with maintenance checklist provided.

3) Inspect interior for newspapers, cups, magazines etc.,and general cleanliness of seats, flooring, overhead bins

   - Remove all refuse.
   - Thoroughly sweep floor.
   - Dust dash area, as needed.
   - Clean interior and windshield, as needed.
   - Fuel vehicle, if needed (bus should always maintain at least 1/2 tank of fuel).

4) If vehicle is equipped with communication devices (radio or telephone), perform an operational test as follows:

   RADIOS: Exercise radio check to dispatch to verify equipment is functioning properly - if not, annotate discrepancy on driver vehicle inspection report.

   TELEPHONES: Power-up telephone. Note during power-up if telephone appears to be working properly by observing digital display to verify that device has power and that telephone signal appears strong - it is not necessary to place call to dispatch.  If signal is weak, note discrepancy on driver vehicle inspection report.

5) Sign daily log sheet prior to operating bus, record current mileage, note any problems found during pre-trip.

6) Vehicle should be fully prepped and staged at "d" street 15 minutes prior to scheduled departure.

**NOTE:    ANY PROBLEMS FOUND IN PRE-TRIP INSPECTIONS THAT MAY RENDER VEHICLE UNSAFE TO OPERATE MUST BE REPORTED IMMEDIATELY TO SHUTTLE DISPATCHER. IF BUS REQUIRES REPLACEMENT, DISPATCHER WILL INSTRUCT DRIVER OF TAG NUMBER OF REPLACEMENT BUS.

U. S. Department of ( te
Solicitation No. S-LMAQM-01-R-0016

### PART I - SCHEDULE

### SECTION H — SPECIAL CONTRACT REQUIREMENTS

(b)  Should the contractor utilize relief drivers to replace primary bus driver for buses already in service, the following procedures will be followed:

1) Report to vehicle 15 minutes prior to operation (unless directed otherwise by dispatch.

2) Perform brief walk-around inspection to identify obvious problems and note cleanliness vehicle exterior.

3) Inspect interior for newspapers, cups, magazines etc., And general cleanliness of seats, flooring, overhead bins and remove all refuse.

4) If vehicle is equipped with communication devices (radio or telephone), perform an operational test as follows:

RADIOS: Exercise radio check to dispatch to verify equipment is functioning properly – if not, annotate discrepancy on driver vehicle inspection report.

TELEPHONES: Power-up telephone. Note during power-up if telephone appears to be working properly by observing digital display to verify that device has power and that telephone signal appears strong – it is not necessary to place call to dispatch. If signal is weak, note discrepancy on driver vehicle inspection report.

5) Sign daily log sheet prior to driving, record current mileage, note problems found during walk-around.

**NOTE 1: ANY PROBLEMS FOUND DURING WALK-AROUND INSPECTION WHICH MAY RENDER VEHICLE UNSAFE TO OPERATE MUST BE REPORTED IMMEDIATELY TO SHUTTLE DISPATCHER VIA RADIO OR TELEPHONE. DISPATCHER WILL PROVIDE DRIVER WITH REPLACEMENT INSTRUCTIONS**

**NOTE 2: IF BUS ARRIVES LATE AND INSUFFICIENT TIME IS   AVAILABLE TO PERFORM WALK-AROUND, WAIT FOR FIRST OPPORTUNITY -- DO NOT DELAY DEPARTURE TO PERFORM WALK-AROUND INSPECTION, UNLESS A POTENTIAL SAFETY-RELATED MAINTENANCE PROBLEM EXIST**

(c) If a maintenance problem occurs after bus has been placed in service, the following procedures will be followed:

1) If possible, immediately pull bus out of traffic flow.

2) Set up traffic warning devices.

3) Notify dispatch via radio or telephone of situation.

4) Provide the following information to dispatch:

- Route you are operating.
- Problem with bus.
- Exact location of breakdown.
- Whether a wrecker is required.
- Number of passengers on bus.

U. S. Department of ( .te
Solicitation No. S-LMAQM-01-R-0016

## PART I - SCHEDULE

### SECTION H — SPECIAL CONTRACT REQUIREMENTS

5) Remain with bus until replacement bus arrives.

### H.6.  INSURANCE REQUIREMENTS

In accordance with FAR 52.228-10, "VEHICULAR AND GENERAL PUBLIC LIABILITY INSURANCE", the Contractor shall, at no additional expense to this contract, provide and maintain, in addition to any other insurance coverage required elsewhere in this contract, the following types of insurance in the amounts specified.  Before commencing work under this contract, the Contractor shall certify to the Contracting Officer in writing, that at least the kinds and minimum amounts of insurance required below have been obtained.

(a)  Workers' Compensation and Employer's Liability--The *Contractor* is required to comply with applicable Federal and State workers' compensation and occupational disease statutes.  If occupational diseases are not compensable under those statutes, they shall be covered under the employer's liability section of the insurance policy, except when contract operations are so commingled with a *Contractor*'s commercial operations that it would not be practical to require this coverage.  Employer's liability coverage of at least $100,000 is required, except in States with exclusive or monopolistic funds that do not permit worker's compensation to be written by private carriers.

(b)  General Liability--The *Contractor* shall provide bodily injury liability insurance coverage written on the comprehensive form policy of at least $5,000,000.00 per occurrence.

(c)  Automobile Liability--The *Contractor* shall provide automobile liability insurance written on the comprehensive form of policy.  The policy shall provide for bodily injury and property damage liability covering the operation of all automobiles used in connection with performing the contract.  Policies covering automobiles operated in the United States shall provide coverage of at least $1,000,000.00 per person and $5,00,000.00 per occurrence for bodily injury and $5,000,000.00 per occurrence for property damage.  The amount of liability coverage on other policies shall be commensurate with any legal requirements of the locality and sufficient to meet normal and customary claims.

### H.7.  KEY PERSONNEL (02/96)

(a)  The *Contractor* shall assign to this contract the following key personnel:

LABOR CATEGORY                          NAME

Program Manager
Shuttle Bus Drivers

**[Names to be inserted by Offeror at time of proposal submission.]**

(b)  The *Contractor* agrees that a partial basis for award of this contract is the list of key personnel proposed.  Accordingly, the *Contractor* agrees to assign to this contract those key persons whose resumes were submitted with the proposal necessary to fulfill the requirements of the contract.  No substitution shall be made without prior notification to and concurrence of the Contracting Officer.  During the first ninety days of performance, the *Contractor* shall make no substitutions of key personnel unless the substitution is necessitated by illness, death, or termination of employment.

-26-

U. S. Department of ( .te
Solicitation No. S-LMAQM-01-R-0016

<u>PART I - SCHEDULE</u>

<u>SECTION H -- SPECIAL CONTRACT REQUIREMENTS</u>

(c)   All proposed substitutes shall meet or exceed the qualifications of the person to be replaced.  The Contracting Officer shall be notified in writing of any proposed substitution at least forty-five days, or ninety days if a security clearance is to be obtained, in advance of the proposed substitution. Such notification shall include:   (1) an explanation of the circumstances necessitating the substitution;  (2) a complete resume of the proposed substitute; and (3) any other information requested by the Contracting Officer to enable him to judge whether or not the *Contractor* is maintaining the same high quality of personnel that provided the partial basis for award.

**H.8.   ORGANIZATIONAL CONFLICT OF INTEREST - GENERAL (02/96)**

(a)   The *Contractor* warrants that, to the best of its knowledge and belief, there are no relevant facts or circumstances which would give rise to an organizational conflict of interest, as defined in FAR Subpart 9.5, or that the Contractor has disclosed all such relevant information.

(b)   The Contractor agrees that if an actual or potential organizational conflict of interest is discovered after award, the Contractor will make a full disclosure in writing to the Contracting Officer.  This disclosure shall include a description of actions which the Contractor has taken or proposes to take to avoid or mitigate the actual or potential conflict.

(c)   If the Contractor was aware of a potential organizational conflict of interest prior to award or discovered an actual or potential conflict after award and did not disclose or misrepresented relevant information to the Contracting Officer, the Government may terminate the contract for default.

(d)   The Contractor shall insert the substance of this clause, including this paragraph (d), in all subcontracts.

**H.9.   SAFEGUARDING OF INFORMATION (05/95)**

The Contractor and its employees shall exercise the utmost discretion in regard to all matters relating to their duties and functions.  They shall not communicate to any person any information known to them by reason of their performance of services under this contract which has not been made public, except in the necessary performance of their duties or upon written authorization of the Contracting Officer.  All documents and records (including photographs) generated during the performance of work under this contract shall be for the sole use of and become the exclusive property of the U.S. Government.  Furthermore, no article, book, pamphlet, recording, broadcast, speech, television appearance, film or photograph concerning any aspect of work performed under this contract shall be published or disseminated through any media without the prior written authorization of the Contracting Officer.  These obligations do not cease upon the expiration or termination of this contract.  The Contractor shall include the substance of this provision in all contracts of employment and in all subcontracts hereunder.

**H.10.   SMOKE-FREE WORKPLACE NOTICE (05/95)**

(a)   The Department of State has been designated a smoke-free workplace.

(b)   *Definitions*.  "Smoking" means a lighted cigar, cigarette, pipe or other tobacco product.  "Smoking Areas" means those designated exterior spaces where the smoking of tobacco products is permitted.

-27-

U. S. Department of State
Solicitation No. S-LMAQM-01-R-0016

<u>PART I - SCHEDULE</u>

<u>SECTION H — SPECIAL CONTRACT REQUIREMENTS</u>

(c)    *Applicability*.  The Smoke-Free Workplace policy applies to all occupants of the Main State Complex; as well as all Department of State occupied space in other domestic buildings, whether owned, rented or leased, and to all Department of State owned, rented, or leased vehicles.

(d)    *Policy*.  It is the policy of the Department of State to promote a healthy environment.    Accordingly,  the Department has adopted a policy prohibiting smoking in the interior of all domestic buildings and facilities effective August 1, 1993.

H.11.  TECHNICAL DIRECTION (05/95)

(a)    Performance  of  the  work  hereunder  shall  be  subject  to  technical instructions,  whether  oral  or  written,  issued  by  the  Contracting  Officer's Representative specified in SECTION G of this contract.    As used herein, technical instructions are defined to include the following:

        (1)    Directions  to  the  Contractor  which  suggest  pursuit  of certain  lines  of  inquiry,  change  work  emphasis,  fill  in  details  or otherwise  serve  to  assist  in  the  Contractor's  accomplishment  of  the Statement of Work.

        (2)    Guidance  to  the  Contractor  which  assists  in  the interpretation of drawings, specifications or technical portions of work description.

(b)    Technical  instructions must be within the general scope of work stated in  the  contract.    Technical  instructions  may  not  be  used  to:    (1)  assign additional  work  under  the  contract;  (2)  direct  a  change  as  defined  in  the "Changes"  clause  of  this  contract;  (3)  increase  or  decrease  the  contract  price or  estimated  contract  amount  (including  fee),  as  applicable,  the  level  of effort,  or  the  time  required  for  contract  performance;  or  (4)  change  any  of the terms, conditions or specifications of the contract.

(c)    If,  in  the  opinion  of  the  Contractor,  any  technical  instruction  calls for  effort  outside  the  scope  of  the  contract  or  is  inconsistent  with  this requirement,  the  Contractor  shall  notify  the  Contracting  Officer  in  writing within  ten  working  days  after  the  receipt  of  any  such  instruction.    The Contractor  shall  not  proceed  with  the  work  affected  by  the  technical instruction  unless  and  until  the  Contractor  is  notified  by  the  Contracting Officer that the technical instruction is within the scope of this contract.

(d)    Nothing  in  the  foregoing  paragraph  shall  be  construed  to  excuse  the Contractor  from  performing  that  portion  of  the  contractual  work  statement which is not affected by the disputed technical instruction.

# EXHIBIT 4

January 5, 2007

Ms. Aileen Robinson
Office of the Legal Advisor
International Claims and Investment Disputes
2430 E St., N.W.
Washington, D. C. 20037

**Re: Theodore F Allen Jr.**

Ms. Robinson:

This letter is to confirm that Mr. Theodore Allen was employed with Skyhawk Logistics, Inc., during the date in question of March 1, 2005. In addition Skyhawk Logistics, Inc holds itself accountable for Mr. Allen's accident involvement during that specified date as well.

If any additional information is needed, please do not hesitate to contact me at the below listed telephone number.

Respectfully,

Kevin G Madden, Sr.
Director of Contract Operations
Skyhawk Logisitics
8121 Georgia Ave. # 1000
Silver Spring, Maryland 20910

CC: James Goodwin
    Ms. Hicks

---

Corporate Headquarters: 8121 Georgia Avenue ~ Suite 1000 Silver Spring, MD 20910
Tel. 301 585-2424 Fax. 301 585-0047 Website: http://www.skyhawk.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|                                    |     |                                   |
| ---------------------------------- | --- | --------------------------------- |
|                                    | )   |                                   |
| **DARREN L. CHISLEY, et al.**      | )   |                                   |
|                                    | )   |                                   |
| Plaintiffs,                        | )   |                                   |
|                                    | )   |                                   |
| v.                                 | )   | **Civil Action No.: 06-1910 (HHK)** |
|                                    | )   |                                   |
| **UNITED STATES OF AMERICA,**      | )   |                                   |
|                                    | )   |                                   |
| Defendant.                         | )   |                                   |
|                                    | )   |                                   |

## <u>ORDER</u>

UPON CONSIDERATION of Defendant's Motion to Dismiss For Lack of Subject

Matter Jurisdiction, the opposition thereto, if any, and good cause having been shown, it is this

_____ day of _____, 2007,

ORDERED that Defendant's motion is hereby GRANTED.  And it is further

ORDERED that this action is hereby DISMISSED.

_____

UNITED STATES DISTRICT JUDGE